# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD RAY RAGER, | : | CIVIL ACTION NO. 3:17-cv-0649 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| P. SMITH, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Ronald Ray Rager ("Rager"), a state inmate incarcerated at the State Correctional Institution at Retreat ("SCI-Retreat"), Hunlock Creek, Pennsylvania, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on April 12, 2017. Presently pending is a motion (Doc. 43) to dismiss filed on behalf of Defendants Dr. Stanley Stanish ("Stanish") and Physician's Assistant Donald O'Brien ("O'Brien"), and Plaintiff's motion (Doc. 57) for a preliminary injunction. For the reasons set forth below, the motion (Doc. 43) to dismiss will be granted and the motion (Doc. 57) for injunctive relief will be denied as moot.

## I.     Rule 12(b)(6) Standard of Review

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the

complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 334 F. App'x 454, 456 (3d Cir. 2009) (citing Phillips v. Cnty of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008)). A district court ruling on a motion to dismiss may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

> Under the pleading regime established by [Bell Atl. Corp. v.] Twombly, 550 U.S. 544 (2007) and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.

Connelly v. Lane Const. Corp., 809 F.3d 780, 787–88 (3d Cir. 2016) (internal citations, quotations and footnote omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. Iqbal, 556 U.S. at 679 (quoting

2

FED. R. CIV. P. 8(a)(2)). At the second step, the Court identifies those allegations that, being merely conclusory, are not entitled to the presumption of truth. Twombly and Iqbal distinguish between legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful." Iqbal, 556 U.S. at 681. Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## II. Allegations of Rager's Complaint

The complaint is comprised of the following allegations: "All defendant(s) are making me and everyone else live in a [sic] unsanitary living environment and they are intentionally interfering with the treatment once prescribed. I was reordered the adult diapers on 2-26-16 and they were discontinue [sic] because I refused to go for a follow up treatment and testing at SCI-Somerset." (Doc. 1, pp. 4, 5).

Also, attached to the complaint are three separate Official Inmate Grievances filed by Rager bearing #642744. (Id. at 9, 12 14). On September 11, 2016, he complains that his bladder problem worsened following a procedure performed by Dr. Shank, causing him to wash his underwear four or five times a day. (Id. at 9). He indicates that he sent request slips to Defendants Stanish and O'Brien for "adult diapers, adult pull-ups & plastic underwear." (Id. at 9, 10). On September 27, 2016, he reports that he is wetting the bed twice during the night. (Id. at 12). He has no feeling when he urinates and he is not getting any relief. (Id.) He again states that he sent request slips to Defendants

Stanish and O'Brien. (Id.) He raises the same concerns again on September 29, 2016, and indicates that he requested relief from Defendants Stanish and O'Brien. (Id. at 14, 15). He received the following Initial review response from the grievance officer:

> I have been assigned as the grievance officer to address your concerns regarding when you had your procedure done on 8/31/2016 by Dr. Shank. You state that the procedure made your bladder control problem worsen. You also state that since your problem got worse and before it got worse, that you were told that this is in pending litigation and without any relief you have to keep washing your underwear out 4 or 5 times a day and in the morning if you wake up and change your underwear, you end up with two pair of underwear to wash.
>
> You do not state how your problem has become worse. Upon review of your medical record, you did sign up for sick call 9/6/16 with complaints of "burning when you pee and peeing a lot more since Dr. Shank did what he did". PA-C O'Brien did a urine dipstick that day which was normal and also ordered a urinalysis and urine culture and sensitivity. This was done 9/7/16 and results were also normal. You also signed up for sick call 9/9/16 with complaints of persistent burning with urination. You were advised by PA-C O'Brien to increase your fluid intake to dilute your urine. You had a Dynamic Bladder study completed at SCI-Somerset by Dr. Shank on 8/31/16. The test was completed without any adverse reactions or complications. Normally after the test, you may feel some discomfort upon urination for a few hours. The results of this test were within normal limits and did not show either evidence of urinary incontinence or urinary retention.
>
> As far as the remainder of your grievance and the pending litigation, your lawsuit was dismissed on 9/7/2016. Based on the above, your grievance is DENIED.

(Id. at 11). The Facility Manager upheld the initial grievance response. (Id. at 13). He received the following response to his final appeal: "Your concern of not being provided incontinence supplies for your bladder control problem since you 8/31/16 procedure was reviewed by the staff of the Bureau of Health Care Services. They reviewed the medical

4

record and determined that the medical care provided was reasonable and appropriate. The findings of the review concur with the Facility Manager's Appeal Response. No evidence of neglect or deliberate indifference has been found. Therefore, your grievance appeal to this office is denied as well as your requested relief." (Id. at 16).

On October 16, 2016, he requested information concerning the conclusion that his medical diapers were not medically indicated. (Id. at 23). Smith responded that "[a]n adult diaper was put on you after procedure in case of leakage and was noted by Somerset to be dry. The adult diapers that were ordered originally were discontinued when you were refusing to go for follow up treatment & testing @ Somerset." (Id.)

Rager is seeking a renewed prescription for adult diapers, a transfer, release, or adult plastic underwear and monetary damages. (Id. at 5).

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege

5

"the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197. "The medical care of prison inmates is entrusted to prison doctors, to whose judgment and training courts owe substantial deference." White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990). Allegations of medical malpractice are not sufficient to establish a constitutional violation. White, 897 F.2d at 108 (citing Estelle, 429 U.S. at 106). And the "mere disagreement as to the proper medical treatment" does not support a claim of violation of the Eighth Amendment. Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834

F.2d 326, 346 (3d Cir. 1987); see also Brown v. DeParlos, 492 F. App'x 211, 216 (3d Cir. 2012).

Based on the allegations of the complaint, and the documents attached thereto, it is clear that Defendants have not been deliberately indifferent to Rager's bladder condition. Rager was seen by a bladder control expert on August 31, 2016, for purposes of urinary incontinence evaluation. (Doc. 1, p. 11). The expert conducted a "Dynamic Bladder study." (Doc. 1, p. 11). The test was completed without incident or complications and the results were within normal limits. There was no evidence of urinary incontinence or retention. (Id.) Adult diapers were placed on him immediately following the procedure in case of leakage. (Id. at 23). The diapers were not medically indicated beyond this timeframe. (Id.) Rager was cautioned that he may feel discomfort following the test. (Id.)

When he signed up for sick call ten days later, complaining that his incontinence problem had become worse, Defendant O'Brien did a "urine dipstick" and ordered a urinalysis and urine culture and sensitivity test. (Id. at 11). The results were normal. (Id.) Two days later, Rager complained of burning with urination. Defendant O'Brien advised him to increase his fluid intake to dilute the urine. (Id.) Subsequently, Rager refused to return to the bladder control expert for follow-up testing and treatment. (Id.)

It is clear from the allegations of the complaint, and the attendant documents, that Rager has been provided consistent medical care for his bladder control problem and simply disagrees with the determination that adult diapers are not medically indicated.

We must defer to the judgment and expertise of the medical providers, as the mere disagreement as to the proper medical treatment does not support a claim of violation of the Eighth Amendment. Further, Rager cannot refuse to partake in follow-up testing and treatment for a urinary condition and then claim that Defendants acted with deliberate indifference to that very condition. Based on the above, the complaint against Defendants Stanish and O'Brien will be dismissed.

## IV. Leave to Amend

"The obligation to liberally construe a *pro se* litigant's pleadings is well-established." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) (citing Estelle, 429 U.S. at106). "[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile. Fletcher–Harlee Corp. v. Pote Concrete Contractors., Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Foman v. Davis, 371 U.S. 178, 182 (1962). Amendment is futile "if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir.1988); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (stating that "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).").

Affording Rager the opportunity to amend would prove futile as he simply cannot establish deliberate indifference on the part of these Defendants.

V. **Conclusion**

Based on the foregoing, the motion (Doc. 43) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of Defendants Stanish and O'Brien will be granted. Plaintiff's motion (Doc. 57) for a preliminary injunction will be denied.

An appropriate Order will enter.

**BY THE COURT:**

<u>**s/James M. Munley**</u>
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: July 3, 2018